Arlin M. ADAMS and Neysa C. Adams

v.

**COMMISSIONER OF INTERNAL REVENUE, Appellant in 87–1394.**

William J. NEALON, Jr. and Jean M. Nealon

v.

**COMMISSIONER OF INTERNAL REVENUE, Appellant in 87–1395.**

Clarence C. NEWCOMER and Jane M. Newcomer

v.

**COMMISSIONER OF INTERNAL REVENUE, Appellant in 87–1396.**

Daniel H. HUYETT, 3rd and Mary J. Huyett

v.

**COMMISSIONER OF INTERNAL REVENUE, Appellant in 87–1397.**

Nos. 87–1394 to 87–1397.

United States Court of Appeals, Third Circuit.

Argued Jan. 4, 1988.

Decided March 7, 1988.

Jonathan S. Cohen, Kenneth L. Greene (argued), Michael L. Paup, Chief, Appellate Section, U.S. Dept. of Justice, Tax Div., Washington, D.C., for appellant.

Lewis M. Porter, Jr. (argued), Porter & Porter, Oakbrook Terrace, Ill., for appellees.

Before GREENBERG and HUTCHINSON, Circuit Judges, and ACKERMAN, District Judge *.

GREENBERG, Circuit Judge.

This is an appeal by the Commissioner of Internal Revenue from a decision of the Tax Court allowing certain deductions for contributions to individual retirement accounts (IRA).[1]  88 T.C. 548 (1987). Appellees Arlin M. Adams and William J. Nealon, Jr. served respectively as judges of the United States Court of Appeals for the Third Circuit and the United States District Court for the Middle District of Pennsylvania and appellees Clarence C. Newcomer and Daniel H. Huyett, 3rd served as judges of the United States District Court for the Eastern District of Pennsylvania during 1980 and 1981.[2]  Each judge's term of office under Article III, section 1, of the Constitution was for his life at a salary which could not be diminished, unless he was removed by impeachment.

The judges each established an IRA as defined in 26 U.S.C. § 408(a) and in 1980 or 1981 made contributions to the accounts not in excess of the applicable limits which they deducted on their individual income tax returns.  Subsequently, the Commissioner of Internal Revenue assessed deficiencies against the judges as he determined that the deductions were proscribed by provisions of the Internal Revenue Code then in effect disallowing deductions if the taxpayer

> was an active participant in— ...
>
> a plan established for its employees by the United States ....

26 U.S.C. § 219(b)(2)(A)(iv) (contributions by an individual for his own benefit); 26 U.S.C. § 220(b)(3)(A)(iv) (contributions for the benefit of an individual and his spouse). Appellees disputed these deficiencies and petitioned the United States Tax Court for a redetermination of the deficiencies.[3]

---

* Honorable Harold A. Ackerman, United States District Judge for the District of New Jersey, sitting by designation.

1.  There are, of course, four separate appeals but as a matter of convenience we refer to the case as involving only one appeal.  Our standard of review is plenary as the appeal involves the interpretation and application of legal precepts. *See United States v. Adams,* 759 F.2d 1099, 1106 (3d Cir.1985), *cert. denied,* 474 U.S. 906, 971, 106 S.Ct. 275, 336, 88 L.Ed.2d 236, 321 (1985).

2.  The judges' spouses are also named as appellees since each judge filed a joint return.

3.  There were changes to the law regarding the deductibility of the contributions to an IRA which are not germane to this case for taxable years commencing after December 31, 1981 and which we therefore do not set forth.

The Tax Court held that the judges' income tax returns did not contain deficiencies. The court centered its analysis on whether the judges were "employees" of the United States and, by use of the common law control test, found that the judges were officers but not employees. Thus, as they were not active participants in a plan established by the United States for its employees they could take deductions for their IRA contributions. We will affirm, though for reasons other than those relied upon principally by the Tax Court.

There can be no doubt that the plan referred to in 26 U.S.C. § 219(b)(2)(A)(iv) and 26 U.S.C. § 220(b)(3)(A)(iv) is a retirement plan. *See* 26 C.F.R. § 1.219–1(b)(2)(i)(A)(4) (1987). Thus, regardless of whether or not judges are employees of the United States, unless the benefits accruing as a consequence of their tenure status or other law can be characterized as a retirement plan, the judges were entitled to take the deductions. Accordingly, we consider what benefits are provided for judges.

Inasmuch as the Constitution makes no provision for retirement of judges, the lifetime appointments of Article III judges may not be shortened by Congress. While the record is silent on the point, it seems that necessarily this constitutional plan must have originally resulted in judges continuing to serve at ages when their capacities were diminished. In 1869 Congress enacted legislation providing for the voluntary resignation of Article III judges. Act of April 10, 1869, ch. 22, § 5, 16 Stat. 44, 45. Under this Act a judge who attained 70 years of age with ten years of service could resign and receive his final salary for the rest of his life. Later, this law was amended to allow a judge who attained a certain age with specified periods of service either to resign or transfer from active status to senior status while still earning his salary. *See* Act of Feb. 25, 1919, ch. 29, § 6, 40 Stat. 1156, 1157.

At the times material to this case, the following statutory provisions for resignation with salary and retirement were effective for Article III judges. A judge who attained 70 years of age with at least ten years of service could resign and continue to receive the salary he was receiving when he resigned. 28 U.S.C. § 371(a). A judge with that age and record of service or a judge who attained 65 years of age with 15 years of service could retire but continue to hold office and receive the salary of the office. 28 U.S.C. § 371(b).[4] A judge could retire because of disability and receive for his lifetime the salary of the office or one-half of that amount depending upon whether he had ten years of service. 28 U.S.C. § 372(a). If a judge retired under any of these provisions, the President could appoint a successor with the advice and consent of the Senate. If a judge was eligible to retire by reason of disability but did not do so, after certain procedures were followed the President could appoint an additional judge with the advice and consent of the Senate. 28 U.S.C. § 372(b).

While these provisions do give judges options, it is clear that they cannot force a judge to relinquish his office or assume a new one. As the Supreme Court has explained, the retirement provisions of the statute

[do] not, and indeed could not, endue him with a new office, different from but embracing the duties of the office of judge. He does not surrender his commission, but continues to act under it. He loses his seniority in office, but that fact, in itself, attests that he remains in office.

*Booth v. United States*, 291 U.S. 339, 350–51, 54 S.Ct. 379, 381, 78 L.Ed. 836 (1934).

It is evident to us that the resignation and retirement statutes afford Article III judges very little if anything more than the Constitution guarantees. With or without the statutes and regardless of their health or other conditions, Article III judges may hold their offices and receive the salary of

---

4. For the current version of these provisions *see* Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, § 204(a), 98 Stat. 333, 350 (codified as amended at 28 U.S.C. § 371).

the offices during their lifetimes even if they are incapable of performing any services. In fact, insofar as we can ascertain, the principal purposes of the retirement provisions are to permit the appointment of new judges and thereby facilitate the judicial business of the United States and to make it possible for the government to obtain substantial services at no additional cost in salary from judges who would otherwise not be sitting. *See Lurie v. Steckel,* 87 F.Supp. 702 (N.D.Ohio 1949), *aff'd on other grounds,* 185 F.2d 921 (6th Cir.1950), *cert. denied,* 340 U.S. 953, 71 S.Ct. 572, 95 L.Ed.2d 687 (1951); 57 Cong.Rec. 368 (daily ed. Dec. 12, 1918) (statement of Rep. Steele) (retirement legislation allows districts "the benefit of such [judicial] services without any additional expense to the Government."). Thus we cannot regard 28 U.S.C. §§ 371(a), 371(b) and 372(a) as establishing a retirement plan for judges. Further, we cannot possibly regard the provisions of the Constitution itself providing for lifetime appointments to be a retirement plan. Inasmuch as there was no plan established by the United States for the judges, the deductions for the IRA contributions should have been allowed regardless of whether they were employees.

In reaching our result we have not ignored the Commissioner's argument that it is unreasonable to permit the deductions as the intent of Congress in allowing them was to permit a taxpayer to have income on which to subsist after retirement and Article III judges do not need that benefit because of the provisions of 28 U.S.C. §§ 371 and 372. We are are instead guided by our opinion in *Hildebrand v. Commissioner of Internal Revenue,* 683 F.2d 57 (3d Cir.1982), in which we upheld the Commissioner when he disallowed an IRA deduction on the ground that the taxpayer was an active participant in a qualified pension plan for a part of a year even though he left the job for which the plan was provided before the end of the year and thus had no interest in the plan at that time and received no tax benefit from it. We dismissed the taxpayer's argument that he should be allowed the deduction as he received no double benefit, though we ac-

knowledged that the tax assessment was "somewhat inequitable." We held that the Code should be given its plain meaning whenever possible even though by introducing a dubious interpretation we could reach an equitable result. Assuming that the Commissioner's equitable argument has merit, the same principle applies here. Even though our result may be regarded as inequitable, it is what the law requires. Nor have we overlooked the circumstance that a judge resigning under 28 U.S.C. § 371(a) is freed from the constraints of 28 U.S.C. § 454 and thus may practice law. We are satisfied, however, that this is merely a collateral consequence of a resignation and cannot convert Article III, section 1, of the Constitution and 28 U.S.C. §§ 371(a) and (b) and 372(a) into a retirement plan.

We are aware that Congress has recently enacted legislation which provides that federal judges are to be treated as employees of the United States for purposes of Chapter 1 of the Internal Revenue Code and as active participants under 26 U.S.C. § 219(g). But this legislation has no impact on our result. *See* Omnibus Budget Reconciliation Act of 1987, Pub.L. No. 100–203, § 10103 (Dec. 22, 1987) (to be codified at 101 Stat. 1330). While legislative history accompanying the act indicates that it was the purpose of Congress to "overturn" the Tax Court decision in this case, there is no indication that Congress believed that the matter had been wrongly decided. Further, the amendment is effective for only taxable years beginning after December 31, 1987 and therefore is not directly applicable here. Consequently, further discussion of the impact of the 1987 legislation which seems not directly to deal with the basis of this decision would be unwarranted.

In summary, we hold that there was no plan established by the United States for the judges within the contemplation of 26 U.S.C. § 219(b)(2)(A)(iv) or 26 U.S.C. § 220(b)(3)(A)(iv) in 1980 and 1981 and thus the deductions should have been allowed.

Accordingly, the decision of the Tax Court will be affirmed.

