Donald J. **PORTER** and Harriet J. Porter, Appellees,

v.

**COMMISSIONER OF INTERNAL REVENUE, Appellant.**

**No. 87–1890.**

United States Court of Appeals, Eighth Circuit.

Submitted March 16, 1988.

Decided Sept. 19, 1988.

Jonathan S. Cohen, Washington, D.C., for appellant.

Lewis M. Porter, Jr., Oakbrook Terrace, Ill., for appellees.

Before FAGG, BOWMAN and MAGILL, Circuit Judges.

FAGG, Circuit Judge.

The Commissioner of Internal Revenue (the Commissioner) appeals a decision of the Tax Court in favor of Donald J. and Harriet J. Porter. The Tax Court held the Porters were entitled to a federal income tax deduction for amounts contributed in 1980 to an individual retirement account (IRA) while Donald J. Porter was an active United States district judge. *See Porter v. Commissioner*, 88 T.C. 548, 564 (1987). We reverse and remand for further proceedings.

In 1980 the Porters made cash contributions to an IRA as defined in 26 U.S.C. § 408(a) (1976), and they took a deduction on their 1980 joint federal income tax return for the amount of the contribution, *see id.* §§ 219(a)(1), 220(a)(1) (1976). *See also Porter*, 88 T.C. at 552 n. 16 (discussing later history of sections 219 and 220). The parties agree the amounts contributed, if deductible, were not in excess of the applicable annual limits.

The Commissioner disallowed the Porters' deduction based on a statute that prohibited IRA deductions when the taxpayer or the taxpayer's spouse was covered by certain other retirement plans. *See id.* §§ 219(b)(2)(A)(iv), 220(b)(3)(A)(iv) (1976). Because the relevant provisions of these deduction sections are identical, the Tax Court referred in its opinion only to section 219. *Porter*, 88 T.C. at 552 n. 16. For purposes of this opinion we will follow this practice as well, with the recognition that our decision applies also to the relevant provisions of section 220. The section 219 prohibition relied on by the Commissioner provided:

> No deduction is allowed under subsection (a) for an individual for the taxable year if for any part of such year—
>
> (A) he was an active participant in—
>
> \* \* \* \* \* \*
>
> (iv) a plan established for its employees by the United States \* \* \*.

26 U.S.C. § 219(b)(2)(A)(iv) (current version at 26 U.S.C. § 219(g)(5)(A)(iii) (1986)).

The Commissioner determined the statutory scheme established by Congress for federal judges in 28 U.S.C. §§ 371 and 372 (1976) (current version at 28 U.S.C. §§ 371, 372 (1982 and Supp. IV 1986)), placed Judge Porter within the section 219 prohibition. This scheme provides for lifetime payments to judges appointed under article III of the Constitution who retire on account of age or disability and who meet the years of service requirements. The Commissioner

disallowed the Porters' IRA deduction and asserted a deficiency against the Porters for the 1980 tax year.

The Porters petitioned the Tax Court for redetermination of the deficiency, and the court held in their favor. *See Porter*, 88 T.C. at 564. The court rested its decision primarily on the conclusion that Judge Porter was not an employee of the United States under the common law definition of that term and, thus, was not subject to the section 219 prohibition. *See id.* at 563. The court also expressed its opinion that the statutory mechanisms providing payments to federal judges after the end of their regular, active judicial service did not constitute a retirement plan under section 219. *See id.* at 563–64. In accordance with its holding, the Tax Court also determined the Porters were not subject to the excise tax on excess IRA contributions. *See id.* at 564.

In direct response to the Tax Court's decision in this case, Congress nine months later passed a bill pointedly overturning that decision by name and applying to federal judges the prohibition against IRA deductions. The bill provides:

CLARIFICATION OF TREATMENT OF FEDERAL JUDGES.
(a) General Rule.—A [f]ederal judge—
(1) shall be treated as an active participant for purposes of section 219(g) of the Internal Revenue Code of 1986, and
(2) shall be treated as an employee for purposes of chapter 1 of such Code.
(b) Effective Date.—The provisions of subsection(a) shall apply to taxable years beginning after December 31, 1987.

Omnibus Budget Reconciliation Act of 1987, § 10103, 101 Stat. 1330–0, 1330–386 (1987) (Omnibus Act).

Judge Porter is, and was during 1980, an active United States District Judge for the District of South Dakota. He was appointed by the President for life during good behavior. U.S. Const. art. III, § 1. Apart from the question of what impact retirement would have on Judge Porter's lifetime appointment, as long as he remains an active article III judge, he is constitutionally entitled to receive an undiminished salary for life. *Id.* Judge Porter also may qualify under 28 U.S.C. §§ 371 and 372 for continued lifetime income from the federal government. This income is available in any of the following ways under these statutes if a judge separates from regular, active judicial service:

First, if certain age and years of service requirements are met, a judge may leave the office and cease completely to perform judicial duties. Notwithstanding this resignation, a judge who meets the statutory requirements continues to receive lifetime payments. These payments are equal to the amount of the judge's salary at the time the judge leaves office.

Second, if a judge meets the age and years of service requirements, the judge may remain in office, but retire from regular, active service. This retired, or senior, judge retains the office and may continue to perform such judicial duties as the judge is willing and able to undertake. Section 371(b) provides that even when a senior judge carries this reduced workload, the judge continues to receive the salary of the office for life that is otherwise guaranteed by the Constitution.

Finally, a judge who becomes permanently disabled may retire from regular, active judicial service. A judge who retires for this reason is entitled to receive either one-half or the full salary of the office for life, depending on years of service accumulated at the time of retirement for disability.

 In the context of this case, the availability of the section 219 IRA income tax deduction hinges on whether Judge Porter was (1) an active participant during any part of the 1980 tax year (2) in a retirement plan (3) established by the United States for its employees. 26 U.S.C. § 219(b)(2)(A)(iv). We approach the issue of deductibility in reverse order and begin with the question of whether Judge Porter was an employee of the federal government for purposes of section 219.

The starting point for the Tax Court's analysis of the employee question was its

conclusion that 26 U.S.C. §§ 219 and 408 collectively establish the equivalent on an individual basis of a 26 U.S.C. § 401 (1976) qualified retirement plan. *Porter,* 88 T.C. at 553–54. Reasoning that the IRA sections and section 401 contain a common term—employee—the court held the definition of employee as used for section 401 qualified plans should be adopted as the section 219 definition. *See id.* at 554.

On appeal, the parties agree the definition of employee generally used for qualified plans is the common law definition. *See id.* This common law definition focuses largely on the degree of control exerted over the employee by the employer. *See Azad v. United States,* 388 F.2d 74, 76 (8th Cir.1968); *Porter,* 88 T.C. at 554–55. Although control over the "manner in which the work is performed is an important if not the master test," *Azad,* 388 F.2d at 76, "each case must stand on its own facts, in light of all the existing circumstances, and * * * no one facet of the relationship is generally determinative," *id.*

Concentrating exclusively on the control element, the Tax Court concluded that because article III judges are "not subject to direction and control of any executive, judicial, or legislative authority" in their decision making, they "are not employees." *Porter,* 88 T.C. at 558. Rather, the Tax Court reasoned that because article III judges are not accountable "to any superior authority other than the law," *id.* at 560, they are officers, not employees, of the United States, *id.* The court thus determined Judge Porter was "not covered by a plan established by the United States for its *employees* and * * * section 219(b)(2)(A)(iv) [was] not applicable to disallow [the Porters'] claimed IRA deductions." *Id.* at 563 (emphasis in original).

On appeal, the Commissioner does not dispute that the common law definition of employee used for qualified plans may be applied to section 219. Neither does the Commissioner dispute that Judge Porter is an officer of the United States. Instead, the Commissioner argues the Tax Court's view of Judge Porter's employment status is misplaced for two reasons.

First, the Commissioner contends the facet of control related to an article III judge's independence in decision making focused on by the Tax Court is not determinative in this setting. Despite this independence, the Commissioner argues there are other forces that exert significant control over a judge's relationship with the federal government in the course of performing judicial duties. *See, e.g., id.* at 559. These indicia of control and others suggest to the Commissioner that broader consideration of the matter might have led the Tax Court to a different result, particularly when the Tax Court itself recognized that the common law definition usually comes into play for "determin[ing] whether an individual was an employee or an independent contractor." *Id.* at 555. We find it unnecessary to pursue this contention because of the persuasive legislative history underlying the Commissioner's second argument.

The Commissioner's second argument is that even though the common law definition of employee may be applied to section 219, the meaning of the term employee in that section is, at bottom, controlled by Congress' intent in passing the original legislation. As he asserted in the Tax Court, the Commissioner contends that when section 219 is construed in the context of the overall goals of the statutory scheme of which it is a part and in light of the problem it was intended to address, application of the common law definition to Judge Porter in a way that treats judicial officers as nonemployees will not effectuate the intent of Congress. We believe the Commissioner's point is well taken.

"Our objective in interpreting a federal statute is to achieve the intent of Congress." *Linquist v. Bowen,* 813 F.2d 884, 888 (8th Cir.1987). This principle applies equally to taxing statutes, *see Helvering v. Stockholms Enskilda Bank,* 293 U.S. 84, 93, 55 S.Ct. 50, 54, 79 L.Ed. 211 (1934), and the intent is ascertained by considering the statutory language "in connection with the context, the general purposes of the statute in which it is found, * * * and other appropriate tests for the ascertainment of the legislative will," *id.* at 93–94, 55 S.Ct.

at 54. The term employee is not specifically defined for purposes relevant to this case in section 219. Because the term's meaning is not made clear by statutory definition, we turn to the legislative history of the statute in search of what Congress intended it to mean in this circumstance.

Section 219 was originally enacted as part of the Employee Retirement Income Security Act of 1974 (ERISA), Pub.L. No. 93–406, § 2002, 88 Stat. 829, 958–59 (1974). The legislative history of section 219 demonstrates that the purpose of allowing IRA deductions was to develop a method for individuals who did not have access to other retirement plan coverage to provide for their own retirement income on a tax-equivalent basis. *See Foulkes v. Commissioner,* 638 F.2d 1105, 1106–07 (7th Cir.1981) (discussing ERISA legislative history regarding IRAs); *Guest v. Commissioner,* 72 T.C. 768, 772–75 (1979) (same). This goal was to be accomplished generally by permitting individuals to establish IRAs from their before-tax income and by letting those contributions accumulate tax free until retirement. In this way, individuals who wished to create their own retirement plan would be placed on a parity (for tax purposes) with other individuals who were covered by qualified or government retirement plans. *See Foulkes,* 638 F.2d at 1106–07.

Congress, by disallowing the IRA deduction when other retirement plan coverage is in place, "sought to preclude the potential for an individual to obtain the tax benefit provided by being a participant in a * * * [retirement] plan as well as the tax benefit allowed to those making contributions to an IRA." *Id.* at 1107. This legislative purpose is the basis of the Commissioner's argument throughout this case that Congress did not intend for article III judges to take advantage of the IRA deduction.

■ In addition to this contemporaneous legislative history, we may take note of the legislative history accompanying Congress' pointed response to the Tax Court's decision in this case. "Subsequent legislation declaring the intent of an earlier statute is entitled to great weight in statutory construction." *Red Lion Broadcasting Co. v.*

*FCC,* 395 U.S. 367, 380–81, 89 S.Ct. 1794, 1801, 23 L.Ed.2d 371 (1969). This principle has added force when Congress ratifies with positive legislation the construction given a statute by an agency charged with its execution. *Id.* at 381–82, 89 S.Ct. at 1801–02. Amending legislation is perceived as clarifying, not changing, an original statute's intended meaning when a conflict of statutory interpretation has arisen. *See In re Adams,* 761 F.2d 1422, 1426–27 (9th Cir.1985); *Callejas v. McMahon,* 750 F.2d 729, 731 (9th Cir.1984); *Brown v. Marquette Sav. & Loan Ass'n,* 686 F.2d 608, 615 (7th Cir.1982); *May Dep't Stores Co. v. Smith,* 572 F.2d 1275, 1277–78 (8th Cir.) (per curiam), *cert. denied,* 439 U.S. 837, 99 S.Ct. 122, 58 L.Ed.2d 134 (1978).

In our opinion, the legislation passed in the aftermath of the *Porter* Tax Court decision vindicates the Commissioner's steadfast view of what Congress meant when it originally passed section 219. *See Red Lion Broadcasting Co.,* 395 U.S. at 380–82, 89 S.Ct. at 1801–02. The House Report is squarely aligned with the Commissioner's construction of section 219—that "judges should not be permitted to make deductible IRA contributions on a basis more favorable than other individuals." H.R.Rep. No. 391(II), 100th Cong., 1st Sess. 1038, *reprinted in* 1987 U.S.Code Cong. & Admin.News pp. 2313-1, 2313-378, 2313-654. Congress' disagreement with the Tax Court's conflicting interpretation of section 219 is apparent. The House Conference Report, which adopted the House version of the bill, states:

In a recent Tax Court decision (*Porter v. Commissioner,* 88 T.C. [548] No. 28 (March 5, 1987)), it was held that [a]rticle III judges are not employees of the United States and, therefore, are not active participants in a plan established for its employees by the United States. * * *

* * * * * *

Under the House bill, the decision in *Porter v. Commissioner* is overturned, and Federal judges are treated as employees for income tax purposes and as active participants for purposes of the

IRA deduction limit, effective for years beginning after December 31, 1987.

H.R.Conf.Rep. No. 495, 100th Cong., 1st Sess. 919, *reprinted in* 1987 U.S.Code Cong. & Admin.News 2313–1245, 2313–1665.

Even so, while the bill is denominated as a "CLARIFICATION OF TREATMENT OF FEDERAL JUDGES," Omnibus Act, 101 Stat. at 1330–386, the legislation is applicable "to taxable years beginning after [1987]," *id.* Thus, an argument can be made that the bill was intended to change, rather than clarify, the existing law. *See* H.R.Rep. No. 391(II), 100th Cong., 1st Sess. 1038, *reprinted in* 1987 U.S.Code Cong. & Admin.News at 2313–654. On balance, however, we are left with an unmistakable impression that Congress intended to take dead aim at a case that runs afoul of Congress' original intent in passing the deduction prohibition.

We form our impression of the 1987 legislation for three reasons. First, the Conference Report identifies the objectionable holding of the *Porter* Tax Court case and indicates Congress' intention to overturn that holding. Second, the new bill's legislative history reaffirms the theme of the original measure's legislative history—that the section 219 prohibition was geared toward preventing double tax benefits to any one taxpayer—in this case, to a federal judge. *See Foulkes*, 638 F.2d at 1107. Finally, the operative requirements of the deduction prohibition for active participants in a government retirement plan were the same when the new bill was passed as they were in 1974. Thus, we deem it significant that Congress directed in a bill aimed at clarifying the treatment of federal judges for IRA purposes that the judges "shall be treated as * * * active participant[s] for purposes of [section 219]," Omnibus Act, 101 Stat. at 1330–356; that is, as active participants, in a plan, established by the United States for its employees.

For these reasons, we believe the Tax Court's reliance on the common law definition of employee and its distinction between officers and employees for purposes of IRA deductibility do not adequately account for the broader context of section 219 and its legislative history. Thus, we agree with the Commissioner that Judge Porter is an employee of the United States for purposes of the section 219 prohibition.

■ Having concluded Judge Porter is an employee under section 219, we must now consider whether the statutory framework contained in 28 U.S.C. §§ 371 and 372 is a retirement plan for purposes of section 219. The Tax Court concluded it was not. *Porter*, 88 T.C. at 563–64. Other judges who were parties with Judge Porter in the Tax Court appealed to the Third Circuit Court of Appeals, and that court also held these statutes are not a plan under section 219. *See Adams v. Commissioner*, 841 F.2d 62, 65–66 (3d Cir.1988). The circuit court concluded:

> [T]he resignation and retirement statutes afford [a]rticle III judges very little if anything more than the Constitution guarantees. With or without the statutes and regardless of their health or other conditions, [a]rticle III judges may hold their offices and receive the salary of the offices during their lifetimes even if they are incapable of performing any services. * * * Thus we cannot regard 28 U.S.C. §§ 371(a), 371(b) and 372(a) as establishing a retirement plan for judges.

*Id.* at 64–65. We disagree.

The United States Constitution does not answer the question of whether an article III judge retains or relinquishes office upon retirement. *See Booth v. United States*, 291 U.S. 339, 348, 54 S.Ct. 379, 380, 78 L.Ed. 836 (1934). The answer to that question is "found in the Act[s] of Congress authorizing retirement." *Id.*

Under these statutes, article III judges may cease completely to perform judicial services and still continue to receive payments from the federal treasury that are not guaranteed to them by the Constitution. *See* 28 U.S.C. §§ 371, 372. Judges may also retire from regular, active service, perform judicial services on only a limited basis, and retain their office and its salary. *See id.* Sections 371 and 372 thus specifically provide retirement income for the remainder of a judge's life after regu-

lar, active service has come to an end. The Supreme Court has recognized that by "authorizing retirement," *Booth*, 291 U.S. at 348, 54 S.Ct. at 380, Congress allows the judicial system the continued benefit of a judge's valuable services if the judge is willing and able to continue serving, *see id.* at 350–51, 54 S.Ct. at 380–81. The Third Circuit also recognized as much when it noted these statutes "give judges options." *Adams*, 841 F.2d at 64. We believe the availability to a judge of these statutory options for the judge's years beyond regular, active service constitutes a retirement plan within the context of section 219.

Finally, we must consider whether Judge Porter was an active participant in this retirement plan. Because of their conclusions on other issues, neither the Tax Court nor the Third Circuit reached this question. It is evident to us that federal judges who progress each day toward attaining the age and service requirements for retirement are actively participating in a retirement plan provided by Congress. In addition, we believe the 1987 legislative action confirms our position. The bill specifically directs that a federal judge "shall be treated as an active participant for purposes of [the IRA deduction limitation]." Omnibus Act, 101 Stat. at 1330–386.

In 1980 Judge Porter was an active participant in a retirement plan established for its employees by the United States within the meaning of section 219. Thus, we conclude the Porters are not entitled to an IRA income tax deduction for that taxable year. We reverse the decision of the Tax Court and remand for further proceedings consistent with this opinion.