T.C. Memo. 2009-102


UNITED STATES TAX COURT


BRUCE CLARK ALLEN AND JAN LYNN ALLEN, Petitioners <u>v</u>. COMMISSIONER
OF INTERNAL REVENUE, Respondent


Docket No. 3779-07.                    Filed May 18, 2009.


Bruce Clark Allen and Jan Lynn Allen, pro sese.

<u>Aimee R. Lobo-Berg</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


COHEN, <u>Judge</u>:  Respondent determined deficiencies of $3,458
and $525 in petitioners' Federal income taxes for 2003 and 2004,
respectively.  After concessions, the issues for decision are:
(1) Whether petitioners are entitled to travel and transportation
expense deductions on the basis of the location of their tax
home; (2) whether petitioners are entitled to additional

deductions for their rental property beyond what respondent has allowed; (3) whether petitioner Bruce Clark Allen (Mr. Allen), as an Oregon certified court interpreter, is a public official for tax purposes; and (4) whether petitioners are entitled to deductions for expenses attributable to Mr. Allen's work as a court interpreter beyond what respondent has allowed.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. Petitioners resided in Oregon at the time they filed their petition.

Petitioners are married and in January 2003 owned a home in The Dalles, Oregon, where they both lived. From January 1 through approximately September 19, 2003, petitioner Jan Lynn Allen (Mrs. Allen) was employed as a teacher by The Dalles School District.

The Oregon Judicial Department (OJD), Office of the State Court Administrator, administers a program for the certification of court interpreters. Or. Rev. Stat. sec. 45.291 (2003). Mr.

Allen fulfilled the certification requirements and became an Oregon Court Certified Interpreter in 2001. In general, under Oregon law, when a court is required to appoint an interpreter for any person in a proceeding before the court or whenever a hearing officer is required to appoint an interpreter in an adjudicatory proceeding, the court, hearing officer, or designee of the hearing officer is to first call an interpreter who has been certified under Oregon Revised Statutes section 45.291, when available, before calling a noncertified court interpreter. Or. Rev. Stat. sec. 45.288 (2003).

From January 1 through March 30, 2003, Mr. Allen worked as a self-employed Spanish language interpreter for the Oregon Employment Department and the OJD in The Dalles. Mr. Allen received a Form 1099-MISC, Miscellaneous Income, reporting these earnings as nonemployee compensation, with neither Social Security taxes nor Federal income taxes deducted.

Mr. Allen also taught part time at Columbia Gorge Community College (CGCC) in The Dalles from January 6 through June 12, 2003.

Petitioners planned to move away from The Dalles after Mrs. Allen finished the 2002-03 school year. Petitioners hoped that both would secure employment in a single locale away from The Dalles.

In a step toward achieving petitioners' goal, Mr. Allen interviewed with the OJD for a staff interpreter position and received an offer for a job in Pendleton, Oregon (approximately 125 miles east of The Dalles). Mr. Allen accepted and began working for the OJD on March 31, 2003 (9 hours per day, 4 days per week, with his schedule changing to 8 hours per day, 5 days per week after June 29, 2003). Mr. Allen stayed in a motel when in Pendleton.

After he started with the OJD in Pendleton, Mr. Allen's CGCC teaching position required that he drive to The Dalles to teach 2 hours on Tuesday and Thursday nights through June 12, 2003. The nights Mr. Allen taught at CGCC, he stayed at petitioners' home in The Dalles. After March 31, 2003, Mr. Allen also worked in The Dalles as a self-employed interpreter on 3 days (April 25, May 2, and June 13, 2003).

Mr. Allen received a Form W-2, Wage and Tax Statement, from the Oregon Judicial Department reporting his wages after he became an employee on March 31, 2003. Mr. Allen received a Form W-2 for his CGCC earnings.

Mrs. Allen attempted to secure a job in Pendleton but was not successful. She pursued teaching positions in other Oregon cities and in August 2003 accepted a job in Oregon City, Oregon (approximately 215 miles east of Pendleton). Mrs. Allen began teaching for the Oregon City School District on or about

September 22, 2003, and continued in this position throughout 2004. Petitioners rented a home in Oregon City that Mrs. Allen moved into in September 2003. Petitioners continued to rent this home throughout 2004.

After Mrs. Allen accepted the Oregon City position, Mr. Allen pursued OJD opportunities in the Oregon City area so that he and his wife could live and work in the same locale. On or about October 8, 2003, the OJD transferred Mr. Allen to Portland, Oregon (approximately 17 miles northwest of Oregon City), and he lived in the Oregon City rental home with Mrs. Allen. Mr. Allen continued to work for the OJD in Portland throughout 2004.

After moving to Oregon City, petitioners rented their house in The Dalles from October 12, 2003, through June 12, 2004. They retained use of the basement so that they could make improvements to the house. On November 11, 2004, petitioners sold their house in The Dalles.

On their 2003 joint Form 1040, U.S. Individual Income Tax Return, petitioners attached a Schedule A, Itemized Deductions, and each claimed unreimbursed employee expenses including travel, meals, and entertainment expenses. Mr. Allen claimed transportation expenses. Petitioners also attached a Schedule C, Profit or Loss From Business, claiming expenses with respect to Mr. Allen's services as a self-employed interpreter, which

included travel, meals, and entertainment, car and truck expenses, utilities, and expenses for business use of a home.

On their 2004 joint tax return petitioners reported $2,200 not-for-profit rental income and claimed a $2,200 deduction on Schedule A for repairs and not-for-profit rental expenses. Both petitioners also claimed unreimbursed employee expenses on their 2004 Schedule A. For Mr. Allen these included vehicle expenses, transportation expenses, travel, meals, and entertainment expenses. Petitioners also attached a Schedule D, Capital Gains and Losses, on which they claimed an exclusion, under section 121, of $30,317 of gain on the sale of their residence in The Dalles.

In the notice of deficiency for 2003 and 2004 sent to petitioners, the Internal Revenue Service (IRS) disallowed a number of the claimed Schedule A and Schedule C deductions for both tax years. During negotiations with the IRS, petitioners made concessions for both tax years. Petitioners also: (1) Requested additional deductions for increased itemized deductions for travel and transportation expenses for their 2003 trips outside The Dalles to income-producing activities on the premise that their only tax home in 2003 was The Dalles; (2) claimed that Oregon City was their only tax home in 2004 and requested additional deductions; (3) claimed deductions for expenses associated with Mr. Allen's work in 2004 as a court interpreter

on the premise that he is a public official; and (4) requested additional Schedule C deductions attributable to Mr. Allen's court interpreter work for meals and entertainment, and business utilities expenses. The IRS made concessions regarding portions of these claimed deductions and disallowed the remainder.

OPINION

Claiming that The Dalles was their only tax home in 2003, petitioners argue that they are entitled to transportation expense deductions for any travel outside The Dalles to any income-producing activity and that they are both entitled to travel (lodging, meals, and incidentals) expense deductions for days that they worked in locations away from The Dalles.

With respect to the dispute over the location of their tax home, petitioners contend that Mr. Allen's employment in Pendleton was temporary, that married couples cannot have separate tax homes, and that a taxpayer has only one tax home each year.

Respondent argues that petitioners are not entitled to the claimed travel and transportation expenses beyond what has been allowed because neither petitioner was away from his or her tax home when the travel expenses were incurred. Respondent asserts that Mrs. Allen's tax home was The Dalles from January 1 through September 19, 2003, and Oregon City from September 19 through December 31, 2003. Respondent contends that from January 1

through March 30, 2003, Mr. Allen's tax home was The Dalles; from March 31 through October 7, 2003, his tax home was Pendleton; and from October 8 through December 31, 2003, his tax home was Oregon City.

Deciding whether transportation and travel expenses are deductible requires the determination of a taxpayer's tax home. See sec. 162(a). The word "home" for purposes of section 162(a)(2) generally refers to the area of a taxpayer's principal (if there is more than one regular) place of employment and not where his personal residence is located. Henderson v. Commissioner, 143 F.3d 497, 499 (9th Cir. 1998), affg. T.C. Memo. 1995-559; Mitchell v. Commissioner, 74 T.C. 578, 581 (1980). When taxpayers have multiple jobs in different locations during the year, are married, and incur duplicate living expenses, identifying the location of the tax home requires review of multiple factors including: (1) Whether employment is permanent, temporary, or indefinite; (2) whether there is a business justification for incurring duplicate living expenses; (3) whether the spouses have separate tax homes; and (4) whether the taxpayers actually have multiple tax homes during 1 year because their principal places of business have changed.

In considering whether employment is permanent, temporary, or indefinite, the general rule is that if the location of the taxpayer's regular place of business changes, so does the

taxpayer's tax home--from the old location to the new location. Kroll v. Commissioner, 49 T.C. 557, 562-563 (1968). There is an exception to this rule if the employment is, or is reasonably expected to be, temporary. Peurifoy v. Commissioner, 358 U.S. 59, 60 (1958). However, this exception does not apply if the employment away from home is indefinite. Kroll v. Commissioner, supra at 562. Unless termination is foreseeable within a short period of time, employment that merely lacks permanence is considered indefinite. See Neal v. Commissioner, 681 F.2d 1157, 1159 (9th Cir. 1982) (following Kasun v. United States, 671 F.2d 1059, 1061 (7th Cir. 1982)), affg. per curiam T.C. Memo. 1981-407. A taxpayer will not be treated as being temporarily away from home during any period of employment exceeding 1 year. Sec. 162(a). Mr. Allen's OJD position in Pendleton was indefinite and not temporary because nothing in the record indicates that termination was foreseeable within a short period of time. Likewise, Mr. Allen's Oregon City OJD employment was not temporary.

The second factor for identifying the tax home is that the taxpayers must have some business justification beyond merely personal reasons for maintaining an alleged tax home remote from a place of employment. See Henderson v. Commissioner, supra at 500; Tucker v. Commissioner, 55 T.C. 783, 787-788 (1971). Mr. Allen had business reasons to be in multiple locations--the OJD

position in Pendleton and teaching for CGCC and working as a self-employed interpreter in The Dalles.  Although this weighs in petitioners' favor, all of the facts are reviewed to identify the tax home.

Third, when married couples maintain multiple places of abode, review is required to determine whether they have separate tax homes.  Married couples that both work and file a joint tax return may have separate tax homes.  See Hammond v. Commissioner, 20 T.C. 285, 287-288 (1953), affd. 213 F.2d 43 (5th Cir. 1954); Chwalow v. Commissioner, T.C. Memo. 1971-185, affd. 470 F.2d 475, 478 (3d Cir. 1972).

Last, when taxpayers have employment or business in multiple locations during 1 year, the principal place of business is generally used to determine the tax home.  See Stright v. Commissioner, T.C. Memo. 1993-576.  When a taxpayer accepts employment either permanently or for an indefinite time away from the place of his usual abode, the taxpayer's tax home will shift to the location of the taxpayer's new principal place of business.  See Coombs v. Commissioner, 608 F.2d 1269, 1276 (9th Cir. 1979), affg. in part and revg. in part on a different issue 67 T.C. 426 (1976).  Determining the principal place of business includes review of the location where the taxpayer spends more of his time, engages in greater business activity, and derives a greater proportion of his income.  Markey v. Commissioner, 490

F.2d 1249, 1255 (6th Cir. 1974), revg. T.C. Memo. 1972-154.  The Court of Appeals for the Ninth Circuit has applied the <u>Markey</u> test to determine the tax home when a taxpayer both earns a substantial income and stays overnight in each of two locations. See <u>Folkman v. United States</u>, 615 F.2d 493 (9th Cir. 1980) (applying the <u>Markey</u> test, the court concluded that the taxpayer's tax home was the location where he spent more working time and derived most of his income); see also <u>Stright v. Commissioner</u>, <u>supra</u>.  Mr. Allen's principal place of business from March 31 through October 7, 2003, was Pendleton because he devoted more working time to his OJD employment in Pendleton than to the jobs in The Dalles, and he earned most of his income in Pendleton.

Because Mr. Allen's OJD employment in Pendleton was not temporary and Pendleton was his principal place of employment or business, Mr. Allen's tax home from March 31 through October 7, 2003, was Pendleton.  When Mr. Allen transferred with the OJD to Portland on approximately October 8, 2003, for a position that continued throughout 2004, his tax home became the Oregon City rental home.

For similar reasons, Oregon City became Mrs. Allen's tax home on September 22, 2003, and remained her tax home throughout 2004.  Her teaching employment was not temporary, and her

principal place of employment shifted to Oregon City when she began her position there.

After starting their respective employment in the Oregon City area, neither petitioner had a business reason to maintain a residence in The Dalles because neither had employment or business there.

Having determined petitioners' tax homes, we can decide the deductibility of petitioners' claimed travel and transportation expenses. Travel expenses may be deductible, including amounts expended for meals and lodging while away from home in the pursuit of a trade or business. Sec. 162(a)(2). For an expense to be deductible, a taxpayer must show that the expense was incurred away from home, that the expense is ordinary and necessary, and that the expense was incurred in pursuit of a trade or business. Commissioner v. Flowers, 326 U.S. 465, 470 (1946); Bochner v. Commissioner, 67 T.C. 824, 827 (1977).

Petitioners have not shown that the travel expenses claimed as deductions for 2003 were incurred while away from their respective tax homes in the pursuit of a trade or business. Thus, no additional travel expenses are deductible beyond those respondent has allowed.

Petitioners argue in the alternative that if Mr. Allen's tax home shifted to Pendleton when he started his employment there, petitioners are entitled to deductions for Mr. Allen's trips

between Pendleton and The Dalles, beyond what respondent allowed. Respondent argues that petitioners are not entitled to additional deductions for travel expenses that Mr. Allen incurred in The Dalles from March 31 through October 7, 2003, because he could have returned to Pendleton (his tax home during this period) after teaching at CGCC. Respondent contends that most of the time Mr. Allen spent during trips to The Dalles was primarily for personal purposes.

If expenses for travel to and from a destination are incurred for both business and other purposes, such expenses are deductible only if the travel is primarily related to the taxpayer's trade or business. Sec. 1.162-2(b)(1), Income Tax Regs. If a trip is primarily personal in nature, expenses are not deductible even if the taxpayer engaged in some business activities at the destination. Id. Whether travel is primarily related to the taxpayer's trade or business or is primarily personal is a question of fact. Sec. 1.162-2(b)(2), Income Tax Regs.; see also Holswade v. Commissioner, 82 T.C. 686, 698, 701 (1984). The amount of time spent on personal activity during the trip, compared with the amount of time spent on activities directly relating to the taxpayer's trade or business, is an important factor in determining whether the trip is primarily personal. Sec. 1.162-2(b)(2), Income Tax Regs. The taxpayer

must prove that the trip was primarily related to the trade or business.  Rule 142(a).

Petitioners have not established that Mr. Allen spent more time teaching and/or on his self-employed interpreter activity than on personal endeavors during his days in The Dalles.  Thus, petitioners are not entitled to additional travel expense deductions for Mr. Allen's trips to The Dalles from March 31 through October 7, 2003.

Petitioners argue that Mr. Allen is entitled to transportation expense deductions for miles driven from their home in The Dalles to his Pendleton OJD employment.  Section 262(a) provides that no deduction is allowed for personal, living, or family expenses.  In general, the cost of daily commuting to and from work is a nondeductible personal expense. See Commissioner v. Flowers, 326 U.S. 465, 473-474 (1946); sec. 1.162-2(e), Income Tax Regs.  Except as allowed by respondent, petitioners' claimed transportation expenses for Mr. Allen's trips from the residence in The Dalles to his Pendleton employment are not deductible under section 162(a), nor are his transportation expenses incurred while commuting between the Oregon City home and his Portland OJD employment.  For the same reason, Mrs. Allen's claimed transportation expense deductions for miles driven between her Oregon City employment and the Oregon City rental home in 2003 are not allowed.

The parties agree that in 2004 Oregon City was petitioners' tax home. However, petitioners claim that they are entitled to Schedule A travel, transportation, and meals and entertainment expense deductions for any time that they spent outside of Oregon City preparing their former residence in The Dalles for sale. Petitioners contend that preparing The Dalles property for sale provided a business reason for them to travel to The Dalles. From January 2004 through June 12, 2004, petitioners rented out a portion of their property in The Dalles. On their 2004 tax return petitioners claimed not-for-profit rental expenses equal to rent moneys received.

Section 183(a) disallows any deduction attributable to activities not engaged in for profit except as provided under section 183(b). Section 183(b)(1) permits deductions which are otherwise allowable regardless of profit objective. Deductions that would be allowable if the activity were engaged in for profit are permitted, but only to the extent that gross income attributable to the activity exceeds the deductions permitted by section 183(b)(1). Sec. 183(b)(2). Because petitioners have already claimed expenses equal to the not-for-profit rental income, the claimed travel and transportation expenses are not deductible. In 2004 petitioners claimed an exclusion of capital gains under section 121 for the sale of their home in The Dalles. Thus, even if the claimed expenses were taken into account in

computing the gain on the sale, the result would be no additional capital gains.

Petitioners' next argument is that Mr. Allen, as an Oregon certified court interpreter, is a public official and under section 1402(c) is exempt from self-employment tax for his 2003 independent contractor earnings. Petitioners also claim that Mr. Allen is entitled to section 162 deductions in 2004 for business utility expenses and meals and entertainment expenses when employed by the OJD because he is a public official. Petitioners contend that Oregon Revised Statutes sections 45.272-45.279 (2003) create the office of court interpreter and that there is a delegation of a portion of the sovereign powers of government according to the policy statement underlying Oregon Revised Statutes section 45.273. Petitioners also assert that as an Oregon certified court interpreter, Mr. Allen had to take an official oath.

Section 1401 imposes taxes on self-employment income, defined generally as the "net earnings from self-employment derived by an individual". Sec. 1402(b). Net earnings from self-employment are "the gross income derived by an individual from any trade or business carried on by such individual, less the deductions allowed by this subtitle which are attributable to such trade or business". Sec. 1402(a).

For purposes of self-employment income or net earnings from

self-employment, the term "trade or business" has "the same meaning as when used in section 162 (relating to trade or business expenses)", with certain exceptions. Sec. 1402(c). Section 7701(a)(26) provides that, for purposes of the Internal Revenue Code, "the term 'trade or business' includes the performance of the functions of a public office." However, one of the specific exceptions under section 1402(c) to the meaning of "trade or business" for self-employment tax purposes is the performance of the functions of a public office (with a further qualification not here pertinent). Sec. 1402(c)(1). Section 1402(c)(1) thus negates, for self-employment tax purposes, the inclusion under section 7701(a)(26) of the performance of public office functions within the meaning of "trade or business", provided the exceptions are not met. Accordingly, income derived by an individual from the performance of the functions of a public office is generally not subject to self-employment tax. See Porter v. Commissioner, 88 T.C. 548, 561 (1987), revd. on other grounds 856 F.2d 1205 (8th Cir. 1988), affd. sub nom. Adams v. Commissioner, 841 F.2d 62 (3d Cir. 1988); see also Ekren v. Commissioner, T.C. Memo. 1986-509.

The term "public official" is not defined in the Internal Revenue Code, but section 1.1402(c)-2(b), Income Tax Regs., provides the following examples: The President, the Vice President, a governor, a mayor, the Secretary of State, a member

of Congress, a State representative, a county commissioner, a judge, a justice of the peace, a county or city attorney, a marshal, a sheriff, a constable, a registrar of deeds, or a notary public.

Caselaw demonstrates elements that courts use to define "public official". See Porter v. Commissioner, supra at 555-558. In general,

> An office is a public station conferred by the appointment of government. The term embraces the idea of tenure, duration, emolument and duties fixed by law. Where an office is created, the law usually fixes its incidents, including its terms, its duties, and its compensation. * * * [Metcalf & Eddy v. Mitchell, 269 U.S. 514, 520 (1926); citations omitted.]

In Pope v. Commissioner, 138 F.2d 1006, 1009 (6th Cir. 1943), the Court of Appeals analyzed five elements to define public office:

> (1) It must be created by the Constitution or the Legislature, or by a municipality or other body with authority conferred by the Legislature. (2) There must be a delegation of a portion of the sovereign powers of government to be exercised for the benefit of the public. (3) The powers conferred and the duties to be discharged must be defined either directly or indirectly by the Legislature or through legislative authority. (4) The duties must be performed independently and without control of a superior power other than the law. (5) The office must have some permanency and continuity and the officer must take an official oath.

The Oregon Revised Statutes provide a procedure for the qualifications and use of court interpreters but do not create an office of court interpreter as petitioners contend. See Or. Rev.

Stat. secs. 45.272-45.279 (2003). Although an Oregon court interpreter provides a service that benefits the public and the position is subject to Oregon laws governing hiring and compensation, a person holding that position is not delegated a portion of the sovereign powers of government to be exercised for the benefit of the public.

When an Oregon court interpreter becomes certified, he or she is afforded the opportunity to be listed on the Office of State Court Administrator's roster of certified court interpreters as available to undertake work. This listing, however, does not convey permanency and continuity. See Or. Rev. Stat. secs. 45.272-45.279. Further, Mr. Allen did not take an "oath of office" as petitioners contend but rather an oath to abide by the Code of Professional Responsibility for Interpreters in the Oregon Courts, to maintain high standards, to remain neutral, and to interpret material thoroughly and precisely.

Mr. Allen's work as a Spanish language interpreter for the OJD and Oregon Employment Department no more entails "the performance of the functions of a public office" than the work of a court reporter (recording and transcribing depositions), as found in Ekren v. Commissioner, supra.

The record shows Mr. Allen's self-employment as a court interpreter to be as an independent contractor and not an officer or employee of a State or political subdivision. Therefore, Mr.

Allen is subject to self-employment tax for his independent contractor earnings.

Generally, for an activity to be considered a trade or business under section 162 it must be engaged in for profit. This principle is modified by section 7701(a)(26), which provides: "The term 'trade or business' includes the performance of the functions of a public office." Therefore, if a taxpayer performs the functions of a public office, he is entitled to deduct his expenses under section 162. See Frank v. United States, 577 F.2d 93, 95 (9th Cir. 1978). Because Mr. Allen is not a public officer as a court interpreter employed by the OJD, the business utility expenses and meals and entertainment expenses that petitioners claim for 2004 under section 162 are not allowed.

Petitioners argue that they are entitled to claimed 2003 Schedule C deductions for Mr. Allen's court interpreter profession for expenses that he incurred for a cellular phone, home Internet service, and a subscription to satellite television Spanish language channels. Respondent contends that petitioners are not entitled to deductions beyond what has been allowed for cellular phone expenses and are not entitled to any deductions claimed for the Internet service and satellite television Spanish channel expenses.

Petitioners claimed the full amount of Mr. Allen's cellular phone expenses incurred in 2003, and respondent allowed a portion of the expenses as a deduction. Cellular phones, as "listed property", must meet strict substantiation requirements for the related expenses to be deductible. See secs. 274(d), 280F(d)(4)(A)(v). Petitioners offered no evidence proving that they are entitled to cellular phone expense deductions claimed for 2003 or 2004 beyond what respondent has allowed. See sec. 1.274-5T(c)(2)(C), Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985).

Respondent allowed a home office deduction for Mr. Allen's business use of the home in The Dalles under section 280A(c)(1) for 7 months in 2003, and utility expenses have been included as a part of this deduction.

Costs of utilities provided to a taxpayer's home are disallowed as personal, living, or family expenses under section 262(a) unless the taxpayer uses a part of his home for his business. Sec. 1.262-1(b)(3), Income Tax Regs. Internet expenses have been characterized as utility expenses. See Verma v. Commissioner, T.C. Memo. 2001-132.

Because petitioners have not established that the claimed utility expenses have not been included in the home office utility expense deduction allowed, they are not entitled to any

additional claimed Internet and satellite television deductions for 2003.

In reaching our decision, we have considered all arguments made, and, to the extent not mentioned, we conclude that they are irrelevant, moot, or without merit.

To reflect the foregoing and concessions of the parties,

<u>Decision will be entered</u>

<u>under Rule 155</u>.